UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
PAUL CAMERON,                   )
                                )
              Plaintiff,        )
                                )
         v.                     )        CIVIL ACTION
                                )        NO. 17-11807-WGY
NANCY A. BERRYHILL, Acting      )
Commissioner of the Social      )
Security Administration,        )
                                )
              Defendant.        )
_____)
```

YOUNG, D.J.                                    February 4, 2019

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Paul Lawrence Cameron, Jr. ("Cameron") seeks judicial
review, pursuant to section 405(g) of the Social Security Act,
of the final decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying his claim for Social
Security disability insurance benefits.  Pl.'s Compl.
("Compl."), ECF No. 1; Pl.'s Mot. Reverse (Incorporated Mem.
Law) ("Pl.'s Mem.") 2, ECF No. 14.

Cameron argues that the hearing officer's decision, which
the Appeals Council's denial of review made final,[1] lacks
substantial evidence and thus amounts to legal error.  Pl.'s

---

[1] Administrative R. Social Security Proceedings ("Admin.
R.") 1, ECF No. 13-2.

Mem. 4, 10.  First, Cameron asserts that the hearing officer erred in his determination at step four of the disability evaluation that Cameron was capable of work as a machine packager, which Cameron submits does not reflect his prior work. Id. at 4-10.  Second, he argues that the hearing officer erred by ignoring another hearing officer's determination of Cameron's residual functional capacity in an earlier disability benefits adjudication.  Id. at 10-11.

### A.  Procedural History

Cameron first applied for disability insurance benefits from the Social Security Administration on February 22, 2011, alleging disability beginning January 1, 2009.  Administrative R. Social Security Proceedings ("Admin. R.") 69, ECF No. 13. The Social Security Administration denied his application on August 10, 2011, again upon reconsideration on February 10, 2012, and a third time after a hearing before hearing officer Constance Carter ("Hearing Officer Carter") on December 20, 2012.  Id. at 66-79.  The Appeals Council upheld Hearing Officer Carter's decision on April 17, 2013.  Id. at 62.

Cameron filed for disability insurance benefits again on June 19, 2014, this time alleging disability beginning April 1, 2009 (later amended to the day following Hearing Officer Carter's unfavorable decision, December 21, 2012), with a date last insured of June 30, 2013.  Id. at 21.  The Social Security

Administration denied this application in September 2014, again on reconsideration in December 2014, and once again after a hearing before the present hearing officer in May 2016. Id. at 21, 34. At this more recent hearing, the hearing officer heard testimony from Cameron, who was represented by counsel, and James Sarno ("Sarno"), a vocational expert. Id. at 39-61. The hearing officer denied Cameron's application at step four of the sequential disability analysis, finding that Cameron retained the residual functional capacity ("RFC") to perform his past relevant work. Id. at 34; see 20 C.F.R. § 404.1565. The Appeals Council denied Cameron's request for review, Admin. R. 1-7, making that decision final and ripe for judicial review, see 42 U.S.C. § 405(g).

Cameron filed a complaint with this Court on September 21, 2017 seeking review of the Commissioner's denial of benefits. Compl., ECF No. 1. The Commissioner filed an answer and the administrative record on December 12, 2017. Def.'s Answer, ECF No. 12; Admin. R., ECF No. 13. Both parties then filed motions (Cameron, to reverse, and the Commissioner, to affirm) and accompanying memoranda. See Pl.'s Mem.; Def.'s Mot. Order Affirming Decision Commissioner, ECF No. 19; Mem. Law Supp. Def.'s Mot. Affirm ("Def.'s Mem."), ECF No. 20. This Court heard oral argument on the motions on July 23, 2018 and took the matter under advisement. Electronic Clerk's Notes, ECF No. 31.

**B.    Factual Background**

Cameron was born on January 14, 1969 and completed schooling through the twelfth grade.  Admin. R. 170.  Cameron has suffered from depression, anxiety, lumbar and cervical degenerative disc disease, hallux limitus (stiff big toe joint), and irritable bowel syndrome ("IBS").  Id. at 24, 29.

This section outlines the facts relevant to the issues raised here, regarding Cameron's prior work and the two hearing officers' RFC findings.

**1.    Cameron's Prior Work**

While Cameron listed in his Work History Report at least eight different jobs he held in the fifteen years prior to the onset of his alleged disability, id. at 187, the hearing officer considered only one of them relevant to the prior work standard, id. at 42-47.  This was Cameron's job at an adhesive factory, which he obtained through an agency called Resource Connection and held between 2003 and 2006.  Id. at 44, 187.

As Cameron described it, in this role he:

> [p]ushed carts w[ith] raw glue trays 10-20 ft. to grinding machine, use[d] lift assist to put glue slabs on conveyer belt to grind glue into 1,000 lb[.] totes. [Used] forklift to move totes on to pallets, lifted totes w[ith] forklift to blending machine, after blending move[d] pallet w[ith] totes to the drying machine, vacuumed around glue into dryer, sometimes package[d] glue in 30-50 lb[.] boxes or bags, put on pallet, moved pallet w[ith] forklift to warehouse.

Id. at 190.

During the second hearing on May 11, 2016, Cameron had the following colloquy with the hearing officer regarding this role:

> CAMERON: One department made the glue, and the department that I was in, I ground the glue. I was operating the machine, blending it, and drying it and packaging it.
>
> HEARING OFFICER: And did you operate a machine to do that? The machine did all of those things for you?
>
> CAMERON: Yes.
>
> HEARING OFFICER: But you controlled the machine?
>
> CAMERON: Yes.
>
> HEARING OFFICER: Okay. And that was a sit-down, stand-up job?
>
> CAMERON: Stand-up.
>
> HEARING OFFICER: Standing up a lot. And any lifting involved? Approximate amount of weight?
>
> CAMERON: During packaging, it was either 30- to 50-pound packages.

Id. at 44-45.

Later in the hearing, Sarno characterized Cameron's past work according to the classifications in the Department of Labor's Dictionary of Occupational Titles ("DOT"). Id. at 58. He described Cameron's role at the adhesive factory as a "machine packager" and classified it as an unskilled position with a Specific Vocational Preparation ("SVP") of two and a medium exertional level. Id. Sarno testified that this role was the only part of Cameron's past relevant work to which he

could return.  Id. at 59.

When the hearing officer offered Cameron's attorney an
opportunity to question Sarno, the attorney did not challenge
the vocational expert's characterization of Cameron's role at
the adhesive factory as a machine packager.  Id.  Instead, he
asked if Cameron could perform such a role if he was found to
have additional limitations, such as an inability to retain
concentration for over 45-50 minutes and an inability to "deal
with normal work stress."  Id.  Sarno denied that Cameron would
be able to work as a machine packager with those limitations,
and the attorney ceased his questioning, commenting: "Your
Honor, I'm just going to give those two limitations because
those are the ones that are supported by his treating
providers."  Id. at 60.  The transcript lacks evidence that
Cameron, Sarno, or the hearing officer had doubts about the
characterization of Cameron's past role as a "machine packager."

### 2.  Hearing Officers' RFC Findings

Hearing Officer Carter was the first to make a disability
determination on Cameron's application.  Id. at 66-79.  A brief
summary of Hearing Officer Carter's findings from the initial
disability evaluation hearing follows.

Hearing Officer Carter found, under step one of the
sequential evaluation process, 20 C.F.R. § 404.1520(b), that
Cameron had not engaged in any substantial gainful activity

during the period of alleged disability.  Admin. R. 71.  Second,

Hearing Officer Carter found that Cameron suffered from three

severe impairments: degenerative disc disease, post-traumatic

stress disorder, and major depressive disorder.  Admin. R. 72

(citing 20 C.F.R. § 404.1520(c)).  Third, Hearing Officer Carter

found that Cameron did not have an impairment equal in severity

to those listed in chapter 20 of the Code of Federal Regulations

section 404, Subpart P, Appendix 1.  Admin. R. 72 (citing 20

C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

Fourth, and most importantly for the subsequent analysis,

Hearing Officer Carter found that Cameron had the RFC to perform

only sedentary work, with the additional limitations that (1) he

could not climb, balance, stoop, kneel, crouch, or crawl more

than occasionally and (2) his work must be limited to "simple,

routine tasks with occasional decision-making, occasional

changes in a work setting and no interaction with the general

public."  Admin. R. 73 (citing 20 C.F.R. § 404.1520(e),

404.1545).

Hearing Officer Carter did not make abundantly clear the

basis for this RFC finding, which is especially lacking as much

of her analysis is rather skeptical of the severity of Cameron's

ailments.  See Admin. R. 75 ("[T]he claimant's statements . . .

are not entirely credible . . ."), 76 ("The fact that the

claimant is seeking work indicates he believes he is capable of

working . . ."), 77 ("[T]hese factors suggest that the claimant's symptoms do not limit his activities to the extent alleged."). The primary evidence that she cited to assess Cameron's physical exertional limitations were the results of an MRI of his spine in 2006 (showing two instances of disc herniation and compression), his subjective reports of chronic lower back pain (treated with Tylenol and Advil), and a 2011 report from his primary care physician reporting generally normal results. _Id._ at 75. She also noted physical symptoms associated with post-traumatic stress disorder and major depressive disorder, including "lack of energy [and] motivation, decreased concentration, irregular eating and sleeping, panic attacks, suicidal ideation without intent or plan, fatigue, self-isolation, hypervigilance, and nightmares." _Id._ at 76.

Hearing Officer Carter gave little weight to the opinions of the Disability Determination Services consultative examiner and Cameron's therapist; concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible"; and adjudged that "he is able to perform a wide and varied range of activities of daily living." _Id._ at 75-76. While her skepticism ultimately led her to conclude that Cameron was not disabled, she nonetheless found that the evidence demonstrated that his RFC limited him to sedentary work. _Id._ at 73-79.

Like Hearing Officer Carter, the next hearing officer found at steps one through three of the sequential evaluation process that Cameron: (1) did not engage in substantial gainful activity during the period of alleged disability; (2) suffered from severe impairments (this time, anxiety and a disorder of the left foot in addition to depression and degenerative disc disease, excluding post-traumatic stress disorder); and (3) did not have an impairment equal in severity to those listed in chapter 20 of the Code of Federal Regulations section 404, Subpart P, Appendix 1.  Id. at 23-25 (citing 20 C.F.R. §§ 404.1520(a)-(e), 404.1525, 404.1526).

At step four, however, the second hearing officer veered from Hearing Officer Carter's earlier analysis.  Compare Admin. R. 78-79 with Admin. R. 26-34.  Now the hearing officer found that Cameron had the RFC to perform medium work, per 20 C.F.R. § 404.1567(c), with the additional limitations that he: (1) could lift 50 pounds only occasionally; (2) was limited to unskilled work; and (3) could not have a job where he would be required to interact meaningfully with the general public, interact closely with supervisors, or have more than occasional changes in work requirements.  Id. at 26.

The hearing officer had "little evidence of record" regarding Cameron's physical limitations during the six-month period under consideration.  Id. at 17.  He thus relied on the

same 2006 MRI results on which Hearing Officer Carter relied, in addition to medical records from Cameron's primary care physician and the Cape Ann Medical Center for visits prior to his alleged disability onset date and after his date last insured.  Id. at 28.  Because the evidence demonstrated that Cameron had not sought treatment for back pain during the period under consideration, had continued to participate in activities such as walks and Native American powwows, and had searched for work and worked as a personal nursing assistant, the hearing officer found that "while the claimant might have suffered from degenerative joint/disc disease . . . the symptoms associated with these conditions, namely neck and lower back pain, were neither sufficiently severe nor constant to preclude the range of medium work set forth in the residual functional capacity above."  Id. at 29.  The hearing officer also summarized evidence of Cameron's left big toe disorder, depression, and anxiety, and found that this evidence did not evince sufficiently severe limitations to alter this RFC finding.  Id. at 29-31.

Relying on the testimony of Sarno and "find[ing] it consistent with the information contained in the Dictionary of Occupational Titles," the hearing officer concluded that Cameron could return to his past relevant work as a machine packager, and thus was ineligible for disability benefits.  Id. at 34.

## II.  ANALYSIS

Cameron asks this Court to remand the Commissioner's denial of disability benefits for two reasons.  First, he claims the Commissioner committed prejudicial error in classifying his past relevant role as a machine packager.  Pl.'s Mem. 4-10.  Second, he argues that the hearing officer erred in failing to consider and discuss Hearing Officer Carter's prior RFC assessment.  Id. at 10-11.  Both arguments are unavailing.

### A.  Standard of Review

In reviewing a denial of Social Security disability insurance benefits, this Court may modify, affirm, or reverse a Commissioner's eligibility decision, with or without remanding for a new hearing.  42 U.S.C. § 405(g).  While this Court reviews the legal standards applied below de novo, its review of the Commissioner's factual determinations is deferential.  See Ward v. Commissioner of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000) (clarifying that judicial review of Social Security determinations is limited to "determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence").

This Court will uphold the Commissioner's factual determination if it is supported by "substantial evidence," which exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support

[the] conclusion." Ortiz v. Secretary of Health & Human Servs.,
955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v.
Secretary of Health & Human Servs., 647 F.2d 218, 222
(1st Cir. 1981)). It is the role of the Commissioner, and not
this Court, to resolve conflicts in the evidence, make
credibility determinations, and draw factual inferences. Id.

**B.    Social Security Disability Standard**

When an individual files a claim seeking Social Security
disability insurance benefits, the Commissioner conducts an
analysis of up to five steps to evaluate his or her disability.
20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Commissioner
first verifies that (1) the claimant has not engaged in
substantial gainful activity during the period of claimed
disability and (2) the claimant has at least one severe
impairment or a severe combination of impairments. 20 C.F.R.
§ 404.1520(a)(4)(i)-(ii). If both conditions are satisfied, the
Commissioner considers if the claimant has an impairment whose
severity meets or equals those listed in the regulations. 20
C.F.R. § 404.1520(a)(4)(iii). If so, the Commissioner will find
the claimant disabled, and go no further in the analysis. Id.
If not, the Commissioner will move on to steps four and five.
At step four, the Commissioner assesses whether the claimant
retains the residual functional capacity ("RFC") to return to
his or her prior work. 20 C.F.R. § 404.1520(a)(4)(iv). If so,

the analysis ends there, and the claimant is not disabled.  Id.
If not, the Commissioner moves on to step five to evaluate if
the claimant lacks the RFC to return to other work.  20 C.F.R.
§ 404.1520(a)(4)(v).  If so, the Commissioner will find the
claimant disabled.  20 C.F.R. § 404.1520(a)(4)(v).  The burden
of proof is on the claimant for the first four steps but shifts
to the Commissioner at the fifth.  Goodermote v. Secretary of
Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).

### C.  Cameron's Composite Job Argument

Cameron contends that the Commissioner's denial of Social
Security disability insurance benefits constitutes legal error
because the hearing officer failed adequately to consider the
responsibilities of his past work.  Pl.'s Mem. 4-10; Pl.'s Resp.
Def.'s Mot. Affirm ("Pl.'s Resp.") 2-6, ECF No. 28.
Specifically, Cameron argues that the hearing officer erred in
accepting Sarno's characterization of his past work as a
"machine packager" when the record, he claims, supports a
finding that the duties of a machine packager constituted -- at
most -- merely part of a composite job with other functions.
Id.  The Commissioner insists that Cameron waived this argument
by failing to raise it at the administrative hearing.  Def.'s
Mem. 10-13.  Even if the argument is not waived, the
Commissioner maintains that substantial evidence supports the

hearing officer's assessments at step four of the eligibility
analysis.  Id. at 13-16.

This Court agrees with the Commissioner that Cameron waived
any argument that his prior work is best characterized as a
composite job by failing to raise it at the administrative
level.  See Def.'s Mem. 10-13.

### 1.   Waiver of Cameron's Composite Job Argument

The Commissioner correctly states that Mills v. Apfel, 244
F.3d 1 (1st Cir. 2001) governs this case.  Id. at 11.  In Mills,
the First Circuit held that an applicant for Social Security
disability benefits must raise any challenge to a hearing
officer's analysis to the hearing officer or the Appeals Council
in order to preserve that challenge for review by the district
court.  244 F.3d at 8.

Cameron's response elucidates the uneasy fit between the
inquisitorial model of Social Security adjudications and waiver
doctrine.  See, e.g., Sims v. Apfel, 530 U.S. 103, 109 (2000)
(explaining that "the desirability of a court imposing a
requirement of issue exhaustion depends on the degree to which
the analogy to normal adversarial litigation applies").

Cameron emphasizes that it is the hearing officer's
independent responsibility not only to find facts, but also to
develop a complete factual record.  Pl.'s Resp. 4.  In such a
context, he urges, the Commissioner ought resolve any apparent

discrepancy.  Id. at 4-6; see also Perez v. Chater, 77 F.3d 41,

47 (2d Cir. 1996) ("[T]he [hearing officer] generally has an

affirmative obligation to develop the administrative record.").

Cameron argues that the inconsistency between the functions of

his past role and those of a machine packager was apparent and,

therefore, the hearing officer had the burden to resolve it at

the administrative hearing.  Pl.'s Resp. 2-6.  The First

Circuit's ruling in Mills that all claims not raised at the

administrative level are waived forecloses this argument.  244

F.3d at 8-9.

 In Sims, the Supreme Court held that a claimant does not

waive a claim where he or she omits it from a request for review

by the Appeals Council (at least as long as the regulations do

not specify otherwise, which they presently do not).  530 U.S.

at 112.  The Court in Sims reasoned that "Social Security

proceedings are inquisitorial rather than adversarial," and thus

issue exhaustion (especially important to ensure the parties

fully develop the issues before an initial fact-finder in

adversarial proceedings) is not essential.  Id. at 110-12.

 In Mills, however, the First Circuit declined to extend

this rule to issues not raised in the first instance before a

hearing officer.  244 F.3d at 8.  Concern for administrative

efficiency drove the outcome in Mills; in a sequential analysis

such as a disability determination, a hearing officer could

often remedy an error at one step of the analysis by proceeding to the next step, an opportunity that is lost when the issue is not raised immediately before the hearing officer.  <u>Id.</u>  The First Circuit in <u>Mills</u> implicitly rejected, but did not directly address, the plaintiff's argument (like Cameron's here) that "the waiver conclusion is wrong . . . because it was the [hearing officer's] independent obligation to get the matter right."  <u>Mills</u>, 244 F.3d at 8.

The case at bar falls squarely within <u>Mills</u>' ambit.  As there, the hearing officer here "stopped at step four of the five-step process when he found that [the claimant] could return to [the claimant's] old job[]."  <u>Id.</u>; Admin. R. 34.  As in <u>Mills</u>, had Cameron challenged the characterization of his past work at the hearing, the hearing officer "would have proceeded to step five to consider whether there were other jobs in the economy available to" him.  <u>Id.</u>  Instead, the Commissioner had no opportunity to address this argument until Cameron's appeal to this Court.  It is exactly this inefficiency that <u>Mills</u> sought to avoid in judicial review of Social Security disability cases.  <u>See id.</u> ("[A] no-waiver approach . . . at the [hearing officer] level . . . could cause havoc . . . .").

This result falls in line with the outcomes in similar cases in this district.  <u>See</u> <u>Holmes</u> v. <u>Colvin</u>, Civ. A. No. 16-10139-DJC, 2016 WL 7410775, at *11 (D. Mass. Dec. 22, 2016)

(Casper, J.) ("[B]ecause Holmes failed to raise the composite job issue before the [hearing officer], it is waived here."); Aho v. Commissioner of Soc. Sec., Civ. A. No. 10-40052-FDS, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011) (Saylor, J.) (denying judicial review of alleged inconsistency between vocational expert's testimony and hearing officer's determination because claimant failed to raise it during hearing); cf. Parker v. Berryhill, Civ. A. No. 16-10762-GAO, 2017 WL 3420910, at *3-4 (D. Mass. Aug. 9, 2017) (O'Toole, J.) (remanding Social Security case to hearing officer to more fully consider claimant's argument, which she had raised at administrative hearing, that her past relevant work was a "composite job").

Even if Mills left open a small window for remand in cases where an inconsistency is so obvious that a hearing officer's failure to resolve it -- absent the claimant's objection -- amounts to an abdication of his duty, this is not such a case.

Cameron cites to the hearing officer's request for clarification as evidence that the inappropriateness of a machine packager designation was readily apparent. Pl.'s Resp. 3-4; Admin. R. 44. The hearing officer's question, however, related to the mechanism by which Cameron completed various tasks in his past work. Admin. R. 44. Cameron's answer that he "controlled the machine" that completed those tasks brought the

description of Cameron's work at the adhesive factory more in line with the DOT classification of a machine packager.  Id. Cameron provides no evidence that the hearing officer was not satisfied that this response resolved a potential discrepancy.

The hearing officer's oversight of any inconsistency here pales in comparison to that of the hearing officer in Mills. See 244 F.3d at 8.  There, the hearing officer denied disability benefits on the grounds that the plaintiff could return to her prior work, but her prior work had consisted only of brief gigs of under one month or less.  Id.  The regulations prohibit the Commissioner from considering past work when it was "merely sporadic."  Id. (citing 20 C.F.R. § 416.965(a)).  The hearing officer did not address this inconsistency.  Id.  The First Circuit denied that the hearing officer's independent duty to develop the facts, however, overcame the plaintiff's failure to raise the issue at the hearing, and ruled it waived, dictating a finding of waiver here as well.  Id.  But see Moore v. United States Soc. Sec. Admin., Civ. A. No. 16-365-PB, 2017 WL 2296997, at *3-4 (D.N.H. May 25, 2017) (holding that claimant did not waive challenge to hearing officer's determination by failing specifically to raise it at the hearing because her "lifting capacity was placed squarely at issue during the . . . hearing," and the "[hearing officer] had a duty to investigate the

facts").[2]

Cameron further urges this Court to consider that it is the hearing officer's independent obligation to resolve "any conflicts between occupational evidence provided by [vocational witnesses] . . . and information in the Dictionary of Occupational Titles."  Pl.'s Resp. 5 (citing SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000)).  Here, however, there is no conflict between the evidence provided by the vocational expert and the information in the DOT.  Rather, Cameron takes issue with the vocational expert's application of the DOT

---

[2] Cameron's argument here bespeaks a concern about the application of waiver doctrine in Social Security determinations and highlights a tension between the reasoning of Sims and the strictures of Mills.  Commentators and Supreme Court Justices alike have argued that the waiver of arguments not raised at the administrative level is inconsistent with the inquisitorial model of fact-finding embodied by Social Security proceedings, where "it is the [hearing officers]'s duty to investigate the facts and develop the arguments both for and against granting benefits."  Sims, 530 U.S. at 111 (plurality opinion); see also Jon C. Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings, 97 Colum. L. Rev. 1289 (1997).

The plaintiff raised such an argument in Mills, 244 F.3d at 8, but the First Circuit did not squarely address it, basing its holding merely on the administrative challenges that would be posed by "a no-waiver approach," id.

This Court is bound by Mills, here, but hopes for more clarity in the future as to the extent of a hearing officer's immunity to judicial review in the absence of a claimant's prior objection.  This is especially important as Social Security hearings lack important corollaries of waiver doctrine that seek to protect due process rights in an adversarial system.  See Dubin, 97 Colum. L. Rev. at 1318-20.

classifications to his past relevant work.  Pl.'s Mem. 7-8;
Pl.'s Resp. 3-4.

Furthermore, Cameron was represented by counsel at the
administrative level, so he is not in a class of individuals
that may be entitled to solicitude for their vulnerability to
the risks of a non-adversarial process.  See DeBlois v.
Secretary of Health & Human Servs., 686 F.2d 76, 81 (1st Cir.
1982) (remanding Social Security case because hearing officer
failed adequately to protect interests of claimant lacking
counsel and suffering from mental disorder); Montalvo v.
Barnhart, 239 F. Supp. 2d 130, 137 (D. Mass. 2003) (Neiman,
M.J.) ("[T]he court has 'made few bones about [its] insistence
that the [Commissioner] bear a responsibility for adequate
development of the record . . . and this responsibility
increases when the applicant is bereft of counsel.'") (second
alteration in original) (quoting Evangelista v. Secretary of
Health & Human Servs., 826 F.2d 136, 142 (1st Cir. 1987)).  But
cf. Sims, 530 U.S. at 114 (O'Connor, J., concurring in part and
concurring in judgment) ("[I]t would be unwise to adopt a rule
that imposes different issue exhaustion obligations depending on
whether claimants are represented by counsel.").

### 2. Machine Packager Classification of Cameron's Past Work

In any event, substantial evidence supports the hearing officer's conclusion that Cameron's prior position at the adhesive factory is best classified as a machine packager. Most of Cameron's responsibilities at the adhesive factory are consistent with those of a machine packager as described in the DOT. A machine packager primarily "tends machine[s] that perform[] one or more packaging functions, such as filling, marking, labeling, banding, tying, packing, or wrapping containers." U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT") § 920.685-078 (4th rev. ed. 1991). When used to describe machines, "to tend" means "to work or mind." See Tend, v.1, Oxford English Dictionary, http://www.oed.com/view/Entry/199029?result=3&rskey=R0v89L& (last visited Dec. 18, 2018). Likewise, Cameron "controlled the machine" that completed various tasks that closely resemble those outlined in the DOT, such as blending, drying, and packaging. Admin. R. 44–45, 190.

Cameron argues that his prior work was a composite job because his obligations included components of at least two separate jobs. Pl.'s Mem. 8-9. The only significant task from his prior work that exceeds the listed responsibilities of a machine packager is operating a forklift. Pl.'s Resp. 6. Even

if Cameron's limitations would prevent him from carrying out the forklift component of his specific prior role, he still could return to the work of a machine packager as it is generally performed in the national economy. See 20 C.F.R. § 404.1560(b)(2); Social Security Ruling 82-61, 1982 SSR LEXIS 31, *4 (describing that claimant "should be found to be 'not disabled'" if he or she can perform prior work as generally performed even if he or she can no longer "perform the excessive functional demands" that may have been required in his or her actual former job); Parkes v. Astrue, Civ. A. No. 1:11-99-NT, 2012 WL 113307, at *5-6 (D. Me. Jan. 11, 2012).

Cameron's contention that the hearing officer could only determine that he could return to prior work as generally performed in the economy at the fifth step of the disability analysis does not help him, Pl.'s Resp. 8, because this is in fact part of the step four inquiry, see 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1560(b)(2).

### D.    Effect of Prior Hearing Officer's RFC Finding

Cameron argues that the second hearing officer committed reversible error in failing to give preclusive effect to Hearing Officer Carter's initial RFC findings. Pl.'s Resp. 8-11.

Cameron initially argued that this Court must remand the denial of disability benefits because the second hearing officer failed specifically to discuss Hearing Officer Carter's findings

from the initial adjudication.  Pl.'s Mem. 10.  For this

argument, Cameron relied on a provision of the Code of Federal

Regulations (which came into effect after the second hearing

officer's decision) that requires a hearing officer to consider

a "prior administrative medical finding" as evidence in a

disability benefits adjudication.  20 C.F.R.

§ 404.1513(a)(5)(iv).  This argument is foreclosed not only by

the fact that this regulation did not govern at the time of the

decision under review, but also because a prior hearing

officer's RFC finding is not an "administrative <u>medical</u>

finding."  <u>Id.</u> (emphasis added) ("A prior administrative medical

finding is a finding . . . about a medical issue made by our

Federal and State agency medical and psychological

consultants.").

Cameron is also incorrect to the extent that he suggests

that case law at the time of the determination under review

mandated that the hearing officer specifically explain how he

considered the RFC finding of a prior disability adjudication.

<u>See</u> Pl.'s Mem. 10.  In his reply, Cameron emphasizes that the

hearing officer ought at least have made findings to justify his

departure from Hearing Officer Carter's RFC assessment.  Pl.'s

Resp. 9.

Whether a prior RFC determination is entitled to any

preclusive effect in a subsequent disability adjudication has

been the subject of some debate.  Compare Drummond v.

Commissioner of Soc. Sec., 126 F.3d 837, 842 (6th Cir. 1997)

("Absent evidence of improvement in a claimant's condition, a

subsequent [hearing officer] is bound by the findings of a

previous [hearing officer].").), holding modified, Earley v.

Commissioner of Soc. Sec., 893 F.3d 929, 932-35 (6th Cir. 2018),

with Krokus v. Colvin, Civ. A. No. 13-389, 2014 WL 31360, at *1

n.1 (W.D. Pa. Jan. 2, 2014) ("[T]he doctrines of claim or issue

preclusion do not bind a subsequent [hearing officer] to

findings and decisions of a prior [hearing officer] when the

claimant seeks benefits for a subsequent period of time.")

(citing Zavilla v. Astrue, Civ. A. No. 09-133, 2009 WL 3364853,

at *12-15 (W.D. Pa. Oct. 16, 2009)).

To date, the First Circuit has only addressed this issue in

affirming the magistrate judge's ruling in Frost v. Barnhart,

which observed that "when a claimant files a new application

covering a new time frame, the issues (including RFC) are to be

examined de novo."  Civ. A. No. 03-215-P-H, 2004 WL 1529286, at

*3 (D. Me. May 7, 2004), aff'd, 121 F. App'x 399, 400 (1st Cir.

2005).[3]  According to the Frost court, the extent of the

---

[3] The Commissioner appropriately points out that the court
in Mantilla v. Colvin erred in stating that the First Circuit
"has not decided any cases" relating to the preclusive effect of
a prior hearing officer's disability finding on a subsequent
claim.  Civ. A. No. 15-11913-FDS, 2016 WL 3882838, at *5 (D.
Mass. July 13, 2016) (Saylor, J.).  While the First Circuit did

preclusive effect of a prior hearing officer's determination varies by the extent to which that prior analysis is relevant to a de novo analysis. Id. at 8-12.

This Court likewise follows the rationale in Albright v. Commissioner of Soc. Sec., where the Fourth Circuit interpreted a past case holding that one hearing officer was bound by a former hearing officer's RFC finding absent new evidence as "best understood as a practical illustration of the substantial evidence rule." 174 F.3d 473, 477 (4th Cir. 1999) (interpreting Lively v. Secretary of Health & Human Servs., 820 F.2d 1391 (4th Cir. 1987)); see also Earley, 893 F.3d at 933 (clarifying that [w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review," but "absent new and additional evidence, the first [hearing officer's] findings are a legitimate, albeit not binding, consideration"). This approach best accords with the general principle that like cases ought be treated alike, and different cases ought be treated differently. Earley, 893 F.3d at 934 ("Fresh review is not blind review."); Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in

_____

not publish a full opinion on this matter in Frost, the court "affirm[ed] for substantially the reasons articulated by the magistrate judge." 121 F. App'x at 399.

the record fairly detracts from its weight.").

Accordingly, this Court evaluates whether the second hearing officer's RFC determination is supported by substantial evidence. The court in Watkins v. Berryhill observed that "two related factors emerge [in reviewing cases that address the extent to which a hearing officer must consider a prior RFC determination]: the length of time between the first and second applications; and whether the second [hearing officer] considered significant new evidence that demonstrated improvement in [p]laintiff's condition." Civ. A. No. 3:16-30117-KAR, 2017 WL 4365158, at *13 (D. Mass. Sept. 29, 2017) (Robertson, M.J.).

Hearing Officer Carter evaluated whether Cameron was disabled between January 1, 2009 and September 30, 2012, Admin. R. 69-70, and the second hearing officer conducted the same inquiry for the period between December 21, 2012 and June 30, 2013, Admin. R. 21. The fact that only three months elapsed between these two periods may suggest that the claimant's condition did not change significantly from one period to the next. Thus, it was logical for the hearing officer to consider the record evidence from the hearing for the previously adjudicated period.

Indeed, the hearing officer here did consider the medical evidence that was the basis for Hearing Officer Carter's prior

RFC determination in conducting his own assessment. Id. at 27.
He noted that "there is little evidence of record during this
six-month period now under consideration," so he was largely
limited to considering "evidence just prior to and following
[the] . . . period" before him. Id. The hearing officer
considered many of the same medical reports on which Hearing
Officer Carter relied, including the 2006 MRI results. Id. at
28. In addition, he considered what amounted largely to an
absence of new evidence that Cameron had sought treatment for
back or neck pain during the period under consideration. Id.

While the absence of new evidence during the second period
could suggest that Cameron's condition did not improve, it could
also reasonably give rise to an inference that his complaints
were overstated. This seems to be the conclusion that the
second hearing officer drew. He noted that since an April 2012
x-ray of Cameron's hip showed no acute abnormalities, "there is
no evidence that he has complained of hip pain since." Id.
Further, the second hearing officer gave weight to the fact
that:

> the record documents no complaints of, or treatment for,
> low back pain associated with [his recurrent disc
> herniations], either prior to his amended alleged onset
> date or up through June 30, 2013, including no
> evaluations . . . and no visits to pain management or to
> emergent care for treatment of acute pain.

Id.

The second hearing officer further explained why he did not give significant weight to evidence of Cameron's disorder of the left foot/great toe and Morton's neuroma (almost all of which originate from after Cameron's date last insured):

> the record reflects that the claimant was only diagnosed with minimal degenerative changes . . . and after receiving cortisone injections in August and September 2013, it documents no further complaints of, or treatment for left foot/great toe pain until . . . almost a year after his date last insured, when the claimant reported . . . that the steroid injections he had been given had been helpful, and that he was not taking any medication for pain at that time.

Id. at 29.

The second hearing officer reasonably relied on the absence of new medical evidence and new evidence of Cameron's activities (including a stint as a personal nursing assistant), id., in addition to his independent and thorough consideration of the entire record to conclude that Cameron had the RFC to perform medium work with additional limitations, id. at 26.

This is especially true when there was limited evidence in Hearing Officer Carter's report substantiating her assessment that Cameron was limited to "sedentary work." Id. at 73. In fact, Hearing Officer Carter's denial observes that contrary to some of Cameron's allegations, he was "able to perform a wide and varied range of activities . . . including shopping, doing chores such as cooking, cleaning, and doing laundry, paying his bills, driving, and going on walks with friends." Id. at 76.

A claimant who reapplies for disability insurance benefits soon after a denial with "very little new evidence . . . should not have high expectations about success." Earley, 893 F.3d at 933. Not only did Cameron's second application fail to supplement the first period's record with substantiating evidence of disability, but its lacunae for the subsequent period gave the hearing officer the opportunity to refine and revise Hearing Officer Carter's conclusions. Substantial evidence thus supports the hearing officer's RFC finding, notwithstanding its modifications to that of Hearing Officer Carter before him.

## III. CONCLUSION

For the reasons discussed above, Cameron's motion to reverse and remand the Commissioner's decision, ECF No. 14, is DENIED. Judgment shall enter for the Commissioner.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

[29]